**ALLIED BUILDING PRODUCTS CORPORATION**

v.

**DELCO ROOFING COMPANY, INC.**

Civil Action No. 96–1703.

United States District Court,
E.D. Pennsylvania.

July 17, 1996.

Richard H. Lowe, Jacoby, Donner & Jacoby, P.C., Philadelphia, PA, for plaintiff Allied Building Products Corp.

Vincent P. Di Fabio, Paoli, PA, for defendant Delco Roofing Co., Inc.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff, Allied Building Products Corporation ("Allied"), filed a Complaint in Confession of Judgment for Money, and the Court entered judgment. The Court now considers the Motion of Defendant, Delco Roofing Company, Inc. ("Delco"), to Open And/Or Strike the Judgment Entered by Confession[1] and a Motion to Stay Proceedings to Enforce the Judgment. For the following reasons, the Court will deny the Petition to Strike the Judgment, defer ruling on Delco's Petition to Open the Judgment, and grant the Motion to Stay Proceedings to Enforce the Judgment.

### I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

On March 5, 1996, Allied filed a Confession of Judgment for Money ("Complaint") in this Court. The Complaint alleges that on February 10, 1994, Delco sought credit from Allied. Delco, through Peter T. Finegan, the company president, signed a "CREDIT APPLICATION AND AGREEMENT" ("Credit Agreement") which contains a warrant of attorney provision stating:

> WHENEVER MY/OUR FIRM FAILS TO MAKE PAYMENTS WHEN DUE, THE UNDERSIGNED HEREBY AUTHORIZE AND EMPOWER THE PROTHONOTARY, CLERK OF COURT OR ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT AGAINST THE UNDERSIGNED INDIVIDUAL(S) ANY MY/OUR FIRM IN FAVOR OF ALLIED BUILDING PROD. CORP. ("ALLIED"), ITS SUCCESSORS OR ASSIGNS, FOR THE SUM OF MONEY WHICH MAY BE DUE TO ALLIED AS OF ANY TERM, WITH OR WITHOUT DEFALCATION FILED, WITH INTEREST AND COSTS, AND WITH COSTS ADDED FOR COLLECTION OF FEES, COURT COSTS, ATTORNEY FEES AND RELEASE OF ALL ERRORS; AND STAY OF EXECUTION UPON ANY LEVY ON REAL ESTATE IS HEREBY WAIVED AND CONDEMNATION AGREED TO.

Pl.'s Compl. Ex. A. According to Allied, Delco defaulted on the obligation outlined in the Credit Agreement by failing to make payment in the amount of $361,298.79.

By Order dated March 13, 1996, this Court entered Judgment in favor of Allied against Delco for $361,298.79 ("Judgment"). Entry of the Judgment prompted the filing of several motions. Specifically, Delco filed its Petition to Open, Petition to Strike, and Motion to Stay the Proceedings to Enforce the Judgment on March 14, 1996. On June 20, 1996, Delco also filed a Motion to Conduct Depositions and Other Discovery in Support of Defendant's Motion to Open And/Or Strike the Judgment, which the Court granted by Order dated June 21, 1996.

### II. DISCUSSION

#### A. OPENING AND STRIKING GENERALLY

Pennsylvania Rule of Civil Procedure 2959 provides relief for a defendant against whom a judgment has been confessed:

> **Striking Off or Opening Judgment; Pleadings; Procedure** (a) Relief from a judgment by confession shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition. The petition may be filed in the county in which the judgment was originally entered, in any county to which the judgment has been transferred or in any other county in which the sheriff has received a writ of execution directed to him to enforce the judgment.

---

1. Under the Federal Rules of Civil Procedure, federal courts located in Pennsylvania enforcing judgments for the payment of money apply Pennsylvania procedural law. See Fed.R.Civ.P. 69(a) (stating "[t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held"). The applicable rules of civil procedure in Pennsylvania refer to such motions as "petitions." See Pa.R.Civ.P. 2959(a), 42 Pa.Cons.Stat. Ann. (West 1987). The Court will refer to Delco's Motion to Open And/Or Strike the Judgment as "Delco's Petition to Open" and "Delco's Petition to Strike."

(b) If the petition states prima facie grounds for relief, the court shall issue a rule to show cause and may grant a stay of proceedings. After being served with a copy of the petition the plaintiff shall file an answer on or before the return day of the rule. The return day of the rule shall be fixed by the court by local rule or special order.

(c) A party waives all defenses and objections which he does not include in his petition or answer.

\* \* \* \* \* \*

(e) The court shall dispose of the rule on petition and answer and on any testimony, depositions, admissions and other evidence. The court for cause shown may stay proceedings on the petition insofar as it seeks to open the judgment pending disposition of the application to strike off the judgment. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court can open the judgment.

Pa.R.Civ.P. 2959.

 "Matters raised by a petition to strike or open are limited to the validity and correctness of the judgment in issue." 7 Goodrich Amram 2d § 2959(a):1. "A petition to strike and a petition to open are two forms of relief with separate remedies; each is intended to relieve a different type of defect in the confession of judgment proceedings." *Manor Bldg. Corp. v. Manor Complex Associates*, 435 Pa.Super. 246, 645 A.2d 843, 845 n. 2 (1994). A petition to strike off the judgment "reaches defects apparent on the face of the record, while a petition to open the judgment offers to show that the defendant can prove a defense to all or part of the plaintiff's claim." 7 Goodrich Amram 2d § 2959(a):2.

## B. *PETITION TO STRIKE*

 A petition to strike "operates as a demurrer to the record and will only be granted if a fatal defect or irregularity appears on the face of the record or judgment. The defect . . . must be alleged in the application." *Manor Bldg. Corp.*, 645 A.2d at 846. Defects sufficient to justify striking a judgment occur when the judgment entered "is for a grossly excessive amount or includes recovery for items that were not permitted in the contract authorizing confession of judgment. In such cases, the defect in the judgment is easily ascertained on the face of the record by examining the confession of judgment clause in the contract." *J.F. Realty Co. v. Yerkes*, 263 Pa.Super. 436, 398 A.2d 215, 216 (1979). "When the petition is one to strike, the facts averred in the affidavit of default are to be taken as true and if the truth of the factual averments are disputed, the remedy is by a proceeding to open the judgment and not to strike." *Id.* 398 A.2d at 217.

Delco bases its Petition to Strike on two grounds. First, it argues that the Credit Agreement contained neither a specific term nor a condition articulating the proper time when Delco's payments were due and owing. Delco points to the Credit Agreement's language: "whenever my/our firm fails to make payments when due." Pl.'s Compl. Ex. A. Delco contends that the Court should strictly construe the warrant of attorney provision allowing confession of judgment and resolve any ambiguities against the party in whose favor the warrant is given.

### 1. *The Complaint*

 Pennsylvania Rule of Civil Procedure 2952 delineates the applicable guidelines for filing a complaint in confession of judgment, all of which Allied has satisfied.[2] The Com-

---

**2.** Pa.R.Civ.P. 2952 articulates the requirements applicable to a complaint in confession of judgment:

> **Complaint. Contents.** The Complaint shall contain the following: (a) the names and last known addresses of the parties; (b) the original or a photostatic copy or like reproduction of the instrument showing the defendant's signature; if the original is not attached, an averment that the copy attached is a true and

correct reproduction of the original. . . . (c) a statement of any assignment of the instrument; (d) either a statement that judgment has not been entered on the instrument in any jurisdiction or if it has been entered an identification of the proceedings; (e) if the judgment may be entered only after default or the occurrence of a condition precedent, an averment of the default or of the occurrence of the condition precedent; (f) an itemized computation of the

plaint includes a "Certification of Addresses," an "Affidavit of Addresses," and a photostatic copy of the Credit Agreement and accompanying credit application showing Peter Finegan's signature. *See* Pl.'s Compl. Exs. B, A (respectively). The Complaint contains no statement of any assignment and attests that judgment has not been entered on the Credit Agreement in any jurisdiction.

Allied also attached the "Averment of Default" by Jerry Manna, Allied's Assistant Corporate Credit Manager, averring that Delco defaulted on its obligations. The Complaint maintains that Allied is entitled to the entry of judgment "calculated in the principal amount of $361,298.79." Compl. at ¶ 10. While Allied did not itemize this amount, the Complaint demands neither attorneys' fees nor interest. Allied bases the demanded sum entirely on matters outside the Credit Agreement, specifically a computer printout of Delco's account affixed to the Complaint which shows an opening debit balance of $0.00 and a closing debit balance of $361,298.79.

With regard to signature and verification, Pa.R.Civ.P. 1024 requires that "[e]very pleading containing an averment of fact not appearing of record in the action ... shall state that the averment ... is true upon the signer's personal knowledge or information and belief shall be verified.... The verification shall be made by one or more of the parties filing the pleading." Pa.R.Civ.P. 1024(a), (c), 42 Pa.Cons.Stat.Ann. (West 1987).

█ While the Complaint does not *per se* contain a "Verification," Allied provided sufficient accompanying submissions with the Complaint to satisfy the relevant verification and signature requirements. The Complaint was signed by Allied's attorney. Allied attached Jerry Manna's (1) "Affidavit of Business Transaction," (2) "Affidavit of Addresses," (3) an affidavit that the Credit Agreement is not a retail sales agreement

or contract, and (4) "Averment of Default." Pl.'s Compl. Ex. B.

Finally, Allied affixed an accompanying document signed by its attorney entitled "Confession of Judgment for Money" where the attorney states "[p]ursuant to the authority contained in the Warrant of Attorney ... I appear for defendant Delco Roofing Co., Inc., confess judgment and assess damages in favor of plaintiff against defendant ... in the principal amount of $361,298.79." Pl.'s Compl. Ex. A. *See George H. Althof, Inc. v. Spartan Inns of America, Inc.,* 295 Pa.Super. 287, 441 A.2d 1236, 1238 (1982) (declining petition to strike and warning against the use of verification as "an offensive weapon designed to strike down an otherwise valid petition") (citation omitted). Moreover, Delco's Petition to Strike alleges neither inadequate compliance with signature and verification requirements nor any resulting prejudice from such, if any, noncompliance. *See id.* (noting "in the instant case there is no averment of prejudice to Appellees resulting from defective verification").

### 2. *Warrant of Attorney Clause*

█ Delco recites the appropriate standard with regard to warrant of attorney provisions. Courts must enter a judgment by confession "in rigid adherence to the provisions of the warrant of attorney; otherwise such judgment will be stricken. A warrant to confess judgment must be explicit and will be strictly construed, with any ambiguities resolved against the party in whose favor the warrant is given." *Dollar Bank v. Northwood Cheese Co.,* 431 Pa.Super. 541, 637 A.2d 309, 311–12 (citations omitted), *alloc. denied,* 539 Pa. 692, 653 A.2d 1231 (1994). *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1275 (3d Cir.1994) (noting "a warrant of attorney to confess judgment must be self sustaining") (citation omitted).

█ The Court considers the warrant of attorney provision delineated in the Credit Agreement valid. First, that provision ex-

---

amount then due, based on matters outside the instrument if necessary.... (g) a demand for judgment as authorized by the warrant.... (i) signature and verification in accordance with the rules relating to a civil action.

Pa.R.Civ.P. 2952, 42 Pa.Cons.Stat.Ann. (West 1987).

plicitly and unambiguously authorizes Allied to confess judgment against Delco without limitation, restriction, or condition. The only prerequisite to the entry of judgment is Delco's failure to make payments, and Allied provided an averment of default with its Complaint. *See Dollar,* 637 A.2d at 312 (noting that when the warrant of attorney clause "authorizes entry of judgment by confession only after default, a judgment entered prior to default or lacking an averment of default is invalid.... [In the absence of a] condition, limitation, or restriction of any kind as to when judgment may be entered, the authority to issue judgment for the full amount of the loan is immediate") (citations omitted).

Second, the language authorizing the confession appears in large capital letters, is located directly in the middle of the second page of a two (2) page document, and is set off in its own numbered paragraph. This paragraph is number three (3) out of five (5) shorter paragraphs on the page. *Cf. Jordan,* 20 F.3d at 1275 (noting "the mere physical inclusion of the warrant of attorney in a mass of fine type verbiage on each reverse sheet does not itself make it part of the contract") (citation omitted). Peter Finegan's signature appears immediately below this provision. *See id.* (describing a self-sustaining warrant as one "in writing and signed by the person to be bound by it; and the requisite signature must bear a direct relation to the warrant and may not be implied extrinsically nor imputed from assignment of the instrument containing the warrant").

Finally, the absence of a specific term or condition articulating the proper time when Delco's payments were due and owing neither invalidates the warrant of attorney provision nor justifies striking off the judgment. Use of the language, "whenever my/our firm fails to make payments when due" indicates that any failure by Delco to satisfy its financial obligations to Allied constitutes default. The Complaint maintains that "Delco defaulted in the obligation under the Credit Application by failing to make

payment to Allied in the amount of $361,298.79, or any portion thereof, as reflected in Allied's statement dated February 12, 1996." Pl.'s Compl. ¶ 8. The Complaint also contains a computer print-out of Delco's account which catalogs Delco's account and transaction history, listing debits, credits, balances, and invoice numbers. *See* Pl.s Compl. Ex. B.

The Court will not strike the Judgment merely because reference to matters outside the Credit Agreement, but within the Complaint, is necessary to determine default and assess Delco's total obligation. Indeed, the Pennsylvania Rule explicitly permits such an inquiry. *See* Pa.R.Civ.P. 2952(f) (allowing itemized computation of amount then due to be "based on matters outside the instrument if necessary"). *See also Leasing Serv. Corp. v. Benson,* 317 Pa.Super. 439, 464 A.2d 402, 406 (1983) (finding "a judgment by confession may properly be maintained when the instrument authorizes it, by the filing of a complaint, even if a computation of the amount may require reference to matters outside the record"); *Dameron v. Woods Restaurant, Inc.,* 305 Pa.Super. 346, 451 A.2d 681, 683 (1982) (finding "it was clearly error for the lower court to strike the judgment because reference to matters outside the lease—but within the complaint—was necessary to determine the default and assess the amount due").[3]

An analysis of the Complaint, submissions attached thereto, and the Credit Agreement and accompanying credit application compel the conclusion that both the Judgment entered and the record of the confession of judgment proceedings commenced in the instant case are devoid of any fatal defects which would warrant striking the Judgment entered.

Delco's second contention in support of its Petition to Strike is that Allied failed to attach the entire agreement between the parties to its Complaint. Specifically, Delco contends that in February of 1994, Allied represented that it would provide extensive credit

---

**3.** This rule applies to cases which are filed pursuant to Pa.R.Civ.P. 2951(b) which provides, in part: "[i]f judgment by confession is authorized by the instrument but may not be entered by the prothonotary under subdivision (a), an action shall be commenced by filing with the prothonotary a complaint substantially in the form provided by Rule 2952". Allied initiated its case by filing a complaint. *See Dameron,* 451 A.2d at 683 (noting this distinction).

in excess of $300,000, no service charges would be imposed, and the credit application attached to the Credit Agreement was needed for informational purposes. Delco protests that the Credit Agreement does not reflect the entire agreement between Allied and Delco. *See* Def.'s Mot. ¶ 7. Delco argues that the agreement between the parties entitled Delco to receive a five percent (5%) discount for amounts paid within sixty (60) days and two percent (2%) for amounts paid within ninety (90) days, and "a formal agreement encompassing all terms and conditions would be negotiated and signed." *Id.* As evidence of this agreement, Delco points to a letter sent from Delco to Allied dated February 10, 1994, stating

> As discussed with you and Joe Hall, I am sending you an incomplete credit application. It is to be used for your banking purposes only, so that your bank can establish a credit line for our company. As we agreed this is not an agreement between Delco Roofing Company and Allied Supply, but simply for banking purposes. As discussed with yourself and Joe Hall, please send me our agreement with the language that Delco Roofing will receive a 5% discount 60 days, 2% discount 90 days. As also previously discussed, credit limits and conditions can be discussed with my attorney after we receive our original discount items.

Def.'s Mot. Ex. C ("Informational Letter").

According to Delco, Allied neglected to attach the "Informational Letter" to the Complaint. Delco argues that Allied's legal right to confess judgment should be construed by reference to all documents and the entire written understanding between the parties, i.e. both the Credit Agreement and the "Informational Letter."

 Delco's second assertion fails because a factual controversy surrounds the "Informational Letter." Allied denies that the letter exists and attached to its Motion in Opposition to Delco's Petition to Strike three (3) affidavits from its employees disavowing that Allied received the letter. *See* Pl.'s Mem.Supp.Mot.Opp.Ex. A (Jonathan Dame), Ex. G. (Jerry Manna, Wayne Dickinson). The presence of this factual dispute makes a petition to strike an inappropriate vehicle by which to dispose of this issue. Delco's remedy lies in its Petition to Open, and the Court will address the "Informational Letter" *infra.* *See J.F. Realty Co.*, 398 A.2d at 216 (noting that in resolving a petition to strike, "if the truth of the factual averments are disputed, the remedy is by a proceeding to open the judgment and not to strike").

### B. *PETITION TO OPEN*

 "In attempting to open a confessed judgment, the petitioner must act promptly, allege a meritorious defense, and provide enough evidence to support the defense to the extent of creating a jury issue." *Liazis v. Kosta, Inc.*, 421 Pa.Super. 502, 618 A.2d 450, 452 (1992) (citation omitted), *alloc. denied*, 536 Pa. 630, 637 A.2d 290 (1993). "A *prima facie* showing of entitlement includes a demonstration that (1) the petition to open was timely filed; (2) the default can be reasonably explained; and (3) facts in support of a proper defense are alleged." *Melvin v. Melvin*, 398 Pa.Super. 1, 580 A.2d 811, 819 (1990).

#### 1. *Allegation of Meritorious Defenses*

 "Pa.R.Civ.P. 2952(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense." *Liazis*, 618 A.2d at 453. *See also Castings Condominium Ass'n, Inc. v. Klein*, 444 Pa.Super. 68, 663 A.2d 220, 224 (1995) (noting petitioner "must plead an arguable meritorious defense sufficient to justify relief if proven") (citation omitted). The Court "must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom. The sufficiency standard, therefore, is identical to the standard employed in a directed verdict consideration." *Liazis*, 618 A.2d at 453 (citations omitted). Conclusory allegations of law, unsupported by allegations of fact, will not provide *prima facie* grounds for relief. *Pittsburgh v. Allegheny County Distribs., Inc.*, 339 Pa.Super. 109, 488 A.2d 333, 334–35 (1985) (declining to find *prima facie* case where allegations in petition were really conclusions of law unsupported by any accompanying allegations of fact).

### a. *Delco's Factual Allegations*

Delco describes the course of conduct between the two parties as follows. For a period of almost two years prior to the execution of the Credit Agreement, Allied solicited Delco's business with promises of extensive and unlimited credit limits, flexible payment schemes, discounts for payments made within certain time periods, and waivers of service charges. When Delco negotiated the Credit Agreement, Delco clearly communicated to Allied that Delco would not open an account with Allied if the terms included either a confession of judgment clause or a personal guarantee.

As discussed *supra*, the "Informational Letter" embodies the terms of the agreement between Allied and Delco as Delco understood them in February, 1994. In August, 1994, Allied unilaterally changed the terms of Delco's account by cutting off shipments of material to Delco's jobs until Peter Finegan and his wife agreed to sign personal guarantees.

On December 21, 1994, Delco and Allied entered into a new oral agreement with different payment terms. A letter from Allied to Delco evidenced the new agreement. *See* Def.'s Mot.Ex. D. In January, 1995, after Delco complied with the terms of this new oral agreement, Delco and Allied entered into a second oral agreement enabling Delco to order materials and make periodic, unspecified payments. Between June, 1995 and September, 1995, Allied began crediting Delco's payments to current charges (as opposed to oldest charges).

In September, 1995, Allied and Delco entered into a third oral agreement calling for Delco to pay two thousand dollars ($2,000) into its account. In January, 1996, Allied and Delco agreed orally (the fourth oral agreement) that Delco would pay with postdated checks for all materials ordered each month, and Delco would pay four thousand dollars ($4,000) in February, 1996, seven thousand dollars ($7,000) in March, 1996, eighth thousand dollars ($8,000) in April, 1996, and ten thousand dollars ($10,000) in June, 1996 and each month thereafter until the past amounts had been paid.

While Delco attempted to make these payments, Allied refused to accept them and insisted that Delco grant Allied mortgages on real property as security for the amount of Delco's account.

### b. *Meritoriousness of Defenses*

A reading of Delco's Petition to Open compels the conclusion that Delco has alleged, with the requisite factual specificity, meritorious defenses to the Complaint. Specifically, Delco argues Allied engaged in fraud and made misrepresentations which fraudulently induced Delco into establishing a credit line with Allied. Delco also alleges that this fraud related to payment terms, discount credits, lack of service charges for sums older than 30 days, and ability to service. Fraud, fraud in the inducement, and misrepresentation provide meritorious defenses in a petition to open the judgment. *See Germantown Mfg. Co. v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138, 141 (1985) (noting that fraud and misrepresentation are meritorious defenses); *Owens v. McCurdy*, 304 Pa.Super. 510, 450 A.2d 1028, 1029 (1982) (referring to fraud in the inducement as a meritorious defense).

Delco also contends that it complied with the various oral contracts concerning payment terms for the balance of the credit line, and Allied failed to properly credit the more than eight hundred and seventy nine thousand dollars ($879,000) which Delco has paid since 1994. According to Delco, Allied also imposed substantial service charges which Delco never agreed to pay. Delco's allegations that the Complaint contains inaccurate figures provides a meritorious defense. *See Davis v. Woxall Hotel, Inc.*, 395 Pa.Super. 465, 577 A.2d 636, 638 (1990) (remarking "[u]nless it is evident from the face of the instrument that the judgment is grossly excessive, or includes recovery for items not authorized by the instrument, a challenge to the accuracy of such amounts should be resolved by a petition to open the judgment") (citation omitted).

Delco claims that Allied insisted upon imposing new credit terms which were neither discussed nor included in the original terms when establishing the credit line. Del-

co believes that Allied breached existing agreements with regard to payment terms, credits, service charges, and ability to service its account. Breach of contract provides a meritorious defense. *Lippin v. Aliprando,* 359 Pa.Super. 212, 518 A.2d 856, 858 (1986) (describing claim that plaintiff breached the contract as a meritorious defense).

Finally, Delco asserts that Allied, by modifying and changing the payment terms for amounts due, waived or estopped its right to confess judgment. Both waiver and estoppel present meritorious defenses. *See Yellow Cab Co. of Philadelphia v. Carpol Realty Co.,* 221 Pa.Super. 132, 289 A.2d 241, 243 (1972) (noting that "waiver can also be a defense to the entry of judgment"); *Lengyel v. Heidelberg Sports Enterprises, Inc.,* 412 Pa. 512, 194 A.2d 869, 873 (1963) (regarding waiver and estoppel as meritorious defenses).

### 2. *Delco's Evidence of Defenses*

"When the court determines that a respondent has effectively denied the material allegations in a petition to open a confessed judgment, as here, the petitioner must proffer clear and convincing evidence to substantiate [its] averments." *Owens,* 450 A.2d at 1030 (citation omitted). "Pa.R.C.P. 209 provides the procedure for establishing such proof. Pursuant to Rule 209, the petitioner must either take depositions on *disputed factual issues* or order cause for argument on the petition and answer, thereby conceding the existence of all *facts* properly pleaded in the answer." *Central Penn Nat'l Bank v. Williams,* 362 Pa.Super. 229, 523 A.2d 1166, 1167 (1987) (citation omitted). *See also America Corp. v. Cascerceri,* 255 Pa.Super. 574, 389 A.2d 126, 129 n. 6 (1978) (noting Rule 209 "contemplates that when a respon-

dent effectively denies material allegations in a petition to open, the petitioner will either take depositions on disputed issues or order the cause for argument on petition and answer").[4] "Rather than wait for the parties, the court, sua sponte, [may order] the parties to proceed under Rule 209." *Owens,* 450 A.2d at 1030. While the Court itself may set a timetable for the taking of depositions and for decision on the petition, there is no requirement that the court do so." *Lazzarotti v. Juliano,* 322 Pa.Super. 129, 469 A.2d 216, 218–19 (1983) (citation omitted).

In the instant case, Allied denies the allegations asserted in Delco's Petition. Allied contends that it never received the "Informational Letter," denies the existence of that document, and characterizes Delco's purported reason to open the Judgment—that the Credit Agreement does not accurately depict the understanding between Allied and Delco—as farcical. Allied also maintains that it never arranged for Delco to make "periodic unspecified payments." Attacking Delco's contention that the Credit Agreement did not provide for the payment of service charges, Allied posits that it charged Delco service charges which Delco paid. Allied also argues that Delco has failed to offer clear, direct, precise, and believable evidence of a meritorious defense sufficient to raise a jury question and that Delco did not verify its defenses by affidavit. According to Allied, the parole evidence rule bars extrinsic evidence such as the "Informational Letter." Allied also posits that Delco's allegations of fraud are conclusory and do not satisfy the standards of Fed.R.Civ.P. 9(b) requiring pleading with particularity.

Allied supported its denials and factual averments with numerous submissions, in-

---

4. Pa.R.Civ.P. 209 provides, in part:

**Duty of Petitioner to Proceed After Answer Filed** If, after the filing and service of the answer, the moving party does not within fifteen days:

(a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or

(b) Order the cause for argument on petition and answer (in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule); the respon-

dent may take a rule as of course on the moving party to show cause why he should not proceed as above. If after hearing the rule shall be made absolute by the court, and the petitioner shall not proceed, as above provided, within fifteen days thereafter, the respondent may order the cause for argument on petition and answer, in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule. Pa.R.Civ.P. 209, 42 Pa.Cons.Stat.Ann. (West 1987).

cluding *inter alia* (1) extensive financial records concerning Delco, internal notes at Allied, and invoices and reports assessing Delco's account and financial condition; (2) an affidavit from Jerry Manna which denies the existence of the "Informational Letter" and presents contradicting factual allegations concerning the agreements between Allied and Delco; (3) an affidavit from Wayne Dickinson, Philadelphia branch credit manager for Allied, averring that a thorough search of Allied's files regarding Delco did not reveal the "Informational Letter;" and (4) an affidavit from Jonathan Dame, credit manager for the Philadelphia and Glenolden branches of Allied who also disputes the existence of the "Informational Letter" and discredits Delco's depiction of its financial obligations to Allied.

■ The Court nonetheless considers Allied's arguments premature. Because the instant case presents factual issues, in that Allied attacks the allegations offered in Delco's Petition, resolution of the Petition to Open will require further discovery. Indeed, disposition of the Petition to Open at this stage of the litigation, with the underdeveloped record that the Court now faces, would be precipitous. The same can be said for addressing Allied's arguments attacking the *sufficiency* and *admissibility* of the proofs presented by Delco. *See* 7 Goodrich Amram 2d § 2959(e):1 (warning that "[t]he court may not decide the questions raised by the peti-

tion until the parties have had the full opportunity afforded them under Rule 209 to obtain and present their evidence").

The Court need not require the parties to proceed under Rule 209, however, because Delco has acted on its own initiative. On June 20, 1996, Delco filed a Motion to Conduct Depositions and Other Discovery in Support of Defendant's Motion to Open And/Or Strike the Judgment Entered By Confession. By Order dated June 21, 1996, the Court granted this Motion, allowing Delco forty-five (45) days to conduct depositions and other discovery. Delco therefore has until August 5, 1996 to take depositions. Any depositions Delco wishes to file with the Court shall be filed no later than August 12, 1996.

■ At the conclusion of discovery, the Court will examine Delco's Petition to Open and Allied's arguments in opposition, apply the standard of review applicable to petitions to open, and resolve the disputations of material facts. *See Manor Bldg. Corp.*, 645 A.2d at 845 n. 2 (noting "[p]roceedings to open a judgment involve equitable principles, and only those judgments which warrant equitable interference will be opened") (citation omitted); 7 Goodrich Amram 2d § 2959(e):1 (stating "[t]he judgment must be opened if the evidence produced would require the issue to be submitted to a jury").[5]

---

5. The Court disagrees with Allied's contention that Delco has not pled fraud with sufficient particularity. First, the standard applicable to pleading meritorious defenses is slightly more flexible than Allied suggests. *See Castings*, 663 A.2d at 224 (noting "defendant does not have to prove every element of [its] defense ... [it] must set forth the defense in precise, specific and clear terms") (citation omitted); *Ashton v. Ashton*, 257 Pa.Super. 134, 390 A.2d 282, 286 (1978) (remarking "[t]he particularity required in averring a meritorious defense is not tantamount to trying the case on the merits. Practically speaking, the specificity with which a defense to a claim can be pleaded, in most instances, will vary directly with the ambiguity or particularity of the complaint") (citation omitted).

Second, the Court believes that Delco has refuted the allegations set forth in Allied's rather sparsely worded Complaint—only ten (10) paragraphs totaling slightly more than two (2) pages in length—with sufficient particularity. Delco

provided the Court with a comprehensive description of its interpretation of the course of conduct between itself and Allied. Delco also revealed the date of the alleged fraud, February, 1994, as well as where and how it occurred, i.e. through misrepresentations made by Allied concerning payment terms, etc. in the period prior to the February, 1994 Credit Agreement. While Delco's Petition to Open does not name any specific Allied employees, an examination of the accompanying submissions indicates that the "Informational Letter" was sent to John Dame at Allied by Peter Finegan. That document states: "[a]s discussed with you and Joe Hall," naming another actor. *See* Def.'s Mot.Ex. C. Furthermore, Delco enclosed a letter from Jerry Manna of Allied to Peter Finegan discussing payment terms. *See* Def.'s Mot.Ex. D. *See also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984) (stating "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise

### 3. Timeliness

In order to make out a *prima facie* case, the Court must determine whether Delco filed its Petition to Open in a timely manner. "Whether there is undue delay is a matter largely within the discretion of the court to which a petition to open is submitted." *Haggerty v. Fetner*, 332 Pa.Super. 333, 481 A.2d 641, 648 (1984). "The crucial factor in determining whether a petition is timely is not the specific time which has elapsed but rather the reasonableness of the explanation given for the delay." *First Seneca Bank & Trust Co. v. Laurel Mountain Dev. Corp.*, 506 Pa. 439, 485 A.2d 1086, 1088 (1984).

The instant case presents a factual dispute regarding the timeliness of Delco's Petition to Open. Both Allied and Delco maintain that different time periods elapsed between Delco's notice that the Judgment was entered and the filing of its Petitions. Delco asserts that its first notice of either the Complaint or the Judgment was by letter dated April 12, 1996 from Allied's counsel. Delco submits a copy of that letter in conjunction with its Petition to Open. *See* Def.'s Mot.Ex. A. Delco calculates that thirty four (34) days elapsed between its first notice of the Judgment and its allegedly prompt filing of its Petitions.

Allied argues that sixty one (61) days elapsed between Delco's first notice of the Judgment and the filing of its Petition. Allied points to the Docket in this case which states that copies of the Judgment were mailed. *See* Doc. No. 3. Allied also submits the affidavit of its attorney who vouches for the authenticity of the attached docket and avers that he contacted Janice Owens, a clerk in the Eastern District's Clerk's Office, who told him that she personally mailed a copy of the Judgment to Delco on March 14, 1996.

This controversy presents the Court with a "material" factual dispute because "a resolution of the factual 'dispute' concerning promptness [would] change the court's decision to deny the petition." *Cross v. 50th Ward Community Ambulance Co.*, 365 Pa.Super. 74, 528 A.2d 1369, 1373 (1987). Given the absence of an established rule, and considering the disparity among different courts' disposition of the issue, the contested thirty days may prove dispositive. *Compare Duque v. D'Angelis*, 390 Pa.Super. 136, 568 A.2d 231, 233 (1990) (stating "[t]his Court has found a time lapse of nine (9) months excessive in seeking a petition to open"); *and Melvin v. Melvin*, 580 A.2d at 819 (considering thirty four (34) days unreasonable delay "given the fact that petitioner knew of the order sought to be opened the day it was entered" and petitioner provided no explanation for this tardiness); *with Citizens Nat'l Bank v. E.H. Bilowich Constr. Corp.*, 303 Pa.Super. 193, 449 A.2d 644, 647 (1982) (finding petition filed two (2) years and eleven (11) months after judgment entered promptly filed); *and M.N.C. Corp. v. Mount Lebanon Med. Ctr.*, 510 Pa. 490, 509 A.2d 1256, 1258 (1986) (finding petition was promptly filed one hundred and seven (107) days after judgment was entered).

The presence of a disputed factual issue material to the disposition of Delco's Petition to Open invokes Rule 209 and requires that the Court defer its decision concerning promptness until further discovery has taken place. *Cross*, 528 A.2d at 1373 (deciding that "Rule 209 procedure is inappropriate because there is no factual dispute concerning the 'reasonable excuse' prong of the three-part test and no material factual dispute with regard to the 'promptness' prong"). Indeed, the absence of timeliness would end the Court's inquiry and preclude granting Delco's Petition to Open. *See Landis v. Richmond*, 249 Pa.Super. 418, 378 A.2d 365, 366

---

misconduct with which they are charged.... [A]llegations of date, place or time fulfill these functions"), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

The Court will assess Delco's evidence of fraud *after* Delco has taken depositions, applying the following standard: "in order to submit an issue of fraud to a jury in our Commonwealth, a party must present clear, precise, and convincing evidence of the elements of fraud.... [T]he standard is higher than a mere preponderance of evidence." *Pittsburgh Nat'l Bank v. Larson*, 352 Pa.Super. 250, 507 A.2d 867, 869 (1986). The elements of fraud are (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance; and (5) damage as a proximate result. *Id.*

(1977) (remarking that because petition was filed seventeen (17) months after entry of judgment without explanation, "[w]hether or not a meritorious defense was set forth is thus irrelevant"). *Cf. Lincoln Bank v. C & H Agency, Inc.,* 500 Pa. 294, 456 A.2d 136, 140 n. 2 (1982) (noting "[e]quitable considerations continue to be relevant ... on the issue of timeliness").

### C. *RULE TO SHOW CAUSE AND STAYING PROCEEDINGS*

 Delco moves pursuant to Fed. R.Civ.P. 62(f) for a stay of the proceedings to execute on the judgment.[6] Rule 62(f) entitles the judgment debtor to a stay in the proceedings if state law would accord such relief. In the instant case, Pennsylvania law provides this remedy. "Where the Court finds that a petition filed under Rule 2959(b) states prima facie grounds for relief, it must issue a rule to show cause and it may grant a stay of further proceedings." 7 Goodrich Amram 2d § 2959(b):1 (citing Pa.R.Civ.P. 2959(e)).

Pursuant to Pennsylvania law, the Court, having found *prima facie* grounds for relief, may, within its discretion, stay the proceedings. *Id.* (citation omitted). Because Delco is entitled to a stay under state law, the Court will grant Delco's Rule 62(f) Motion.

---

**6.** Rule 62(f) provides:

**Stay According to State Law** In any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the district court held therein, to such stay as would be accorded the judgment debtor had the action been maintained in the courts of that state. Fed.R.Civ.P. 62(f).